IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERNAEA L. WHEELER,　　　　　　　　*

　　Plaintiff,　　　　　　　　　　　　*

　　v.　　　　　　　　　　　　　　　*　　　CIVIL NO. JKB-25-3558

ANNE ARUNDEL COUNTY,　　　　　　*
MARYLAND, et al.,
　　　　　　　　　　　　　　　　　*
　　Defendants.
　　　　　　　　　　　　　　　　　*

*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*

**MEMORANDUM**

Pending before the Court is Defendants' Motion to Dismiss Complaint (ECF No. 3). For the reasons that follow, the Motion will be granted in part and denied in part.

## I.　FACTUAL BACKGROUND[1]

Plaintiff Ternaea Wheeler is an African American woman who worked for Anne Arundel Detention Facilities ("AADF") as a Detention Officer from 2008 until her termination in 2024. (ECF No. 1 ¶¶ 4, 15.) She brings this employment discrimination action against the following Defendants: Anne Arundel County ("the County"); Christopher Klein, the Superintendent of AADF; Jasper Ingle, a supervisory officer at AADF; and 10 John Does who are alleged to be "unknown supervisors, investigators, and policymakers." (*Id.* ¶¶ 5–8.)

### A. Initial Allegations of Harassment and Discrimination

Plaintiff alleges that she "was subjected to a longstanding pattern of disparate treatment" while she worked at AADF. (*Id.* at 5 n.1.) In her view, the "preferential treatment of white staff,

---

[1] At the motion to dismiss stage, the Court "accept[s] the complaint's factual allegations as true and construe[s] the facts in the light most favorable to the plaintiff." *Johnson v. Baltimore City*, 163 F.4th 808, 814 (4th Cir. 2026).

particularly those with personal connections within the chain of command, reflects a broader pattern of favoritism and racial discrimination within the institution." (*Id.* ¶ 20.d.)

The crux of Plaintiff's claims involves an escalating series of events that began in July 2022. At that time, inmates claimed that Plaintiff used profanity against them in relation to an incident where undercooked food was served to the inmates.[2] (*Id.* ¶¶ 22, 24.) Plaintiff denied using profanity, but she received a letter of reprimand for this alleged conduct. (*Id.* ¶¶ 24, 26.) Then, in October 2022, an inmate allegedly "directed a severe racial and gender-based slur at Plaintiff, calling her a '[n*****] bitch.'" (*Id.* ¶ 32.) A supervisor, Sgt. Blackburn, did not discipline this inmate and instead allegedly directed Plaintiff "to 'let it go' in front of the inmates." (*Id.*)

Plaintiff alleges other hostile actions by Sgt. Blackburn, who is a white male. (*Id.* ¶ 27.) For instance, he allegedly used his role as a supervisor to block Plaintiff's raises by giving her negative performance reviews. (*Id.* ¶ 28.) Plaintiff also contends that he made unsubstantiated allegations that Plaintiff was fraternizing with inmates. (*Id.* ¶ 29.) Further, after Sgt. Blackburn made repeated comments about Plaintiff's personal life, she filed a complaint against him, but a different supervisor removed the complaint from Sgt. Blackburn's file. (*Id.* ¶ 27.) Later, in approximately February 2023, Sgt. Blackburn allegedly directed other AADF officers to submit statements supporting an accusation that Plaintiff was disrespectful toward inmates. (*Id.* ¶¶ 50–51.)

In April 2023, Plaintiff was again accused of using profanity toward inmates. (*Id.* ¶ 54.) She admitted this accusation but claimed that it was in response to an inmate's sexually explicit comments toward her. (*Id.* ¶¶ 55–56.) In July 2023, she was given a three-day suspension for this

---

[2] Plaintiff had previously been accused of using profanity toward inmates in 2015, an allegation which she denied. (ECF No. 1 ¶ 18.)

conduct. (*Id.* ¶ 59.) That same month, another AADF officer used profanity toward Plaintiff, but Sgt. Blackburn blamed Plaintiff for the incident. (*Id.* ¶ 60.)

### B.  The EEOC Charges and Plaintiff's Termination

Following this July 2023 incident, on August 2, 2023, Plaintiff filed a Charge of Discrimination with the EEOC. (ECF No. 3-4 at 4.) This Charge alleged harassment, racial discrimination, and retaliation for engaging in a protected activity. (*Id.*) Shortly thereafter, in December 2023, Plaintiff again used profanity while on a phone call with a different AADF officer. (ECF No. 1 ¶ 67.) Plaintiff admitted this allegation. (*Id.*)

On March 1, 2024, Plaintiff and the County agreed that Plaintiff would be placed on a last chance agreement ("LCA"), meaning that subsequent misconduct would result in Plaintiff's termination. (*See id.* ¶ 73.) Around the end of May 2024, several nurses accused Plaintiff of using profanity toward inmates in the medical unit. (*Id.* ¶ 77.) Although Plaintiff claims that no allegations were ever "formally disclosed" to her, she was aware of an investigation into her and requested that video footage of the incident be reviewed. (*Id.* ¶¶ 77, 78, 80.) In the meantime, on June 10, 2024, the EEOC informed Plaintiff that it was closing her case and issued a right-to-sue letter. (*Id.* ¶ 85.) The next day, Plaintiff was fired after receiving a pre-discharge hearing. (*Id.* ¶ 86; ECF No. 3-7 at 1.)

After her termination, Plaintiff contacted an EEOC supervisor, Rosemarie Rhodes, and asked that her case be reopened. (ECF No. 1 ¶ 87.) Ms. Rhodes determined that Plaintiff had been retaliated against for filing the EEOC Charge and that insufficient investigative work had been performed on the Charge, so she reopened Plaintiff's case. (*Id.* ¶ 88.) "Following Supervisor Rhodes' advice," Plaintiff filed a second EEOC Charge of Discrimination on August 26, 2024. (*Id.* ¶ 89.) This Charge asserted only retaliation and gender discrimination. (ECF No. 3-8 at 1.)

3

On August 7, 2025, the EEOC closed this case and issued Plaintiff a second right-to-sue letter. (ECF No. 1 ¶ 90.) Plaintiff brought this action on October 29, 2025.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).[3]

Further, when deciding a motion to dismiss, the Court generally must not consider documents that are outside of the complaint. However, the Court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). Here, Defendants attached several documents to their Motion to Dismiss, including Plaintiff's Charges of Discrimination submitted to the EEOC, the right-to-sue letters issued by the

---

[3] Defendants make a passing attempt at arguing that their Motion should be considered, in the alternative, as one seeking summary judgment. The Court may convert a motion to dismiss to one for summary judgment under Rule 12(d) where the plaintiff has actual notice that such conversion may occur. *Ridgley v. Bailey*, Civ. No. 24-3633-LKG, 2026 WL 183483, at *2 (D. Md. Jan. 23, 2026). Here, there was not sufficient notice. Despite mentioning the legal standards for summary judgment at various points, Defendants' Motion is entitled as a "motion to dismiss," not as one seeking summary judgment in the alternative. (ECF No. 3.) And in the Motion's prayer for relief, Defendants only "request that this Court grant their Motion and dismiss all claims of Plaintiff's Complaint." (*Id.* at 1.) There is no mention of summary judgment. Thus, Plaintiff was not on notice that the Motion could be converted into a motion for summary judgment, and the Court will treat the Motion as a motion to dismiss.

EEOC, Plaintiff's employment termination letter, the last chance agreement, and several other documents. Judges in this District routinely find that EEOC Charges of Discrimination and right-to-sue letters may be considered in ruling on a motion to dismiss. *E.g., Plummer v. MGM Nat'l Harbor, LLC*, Civ. No. DKC-23-592, 2024 WL 964224, at *2 (D. Md. Mar. 6, 2024); *Jones v. City of Salisbury*, Civ. No. 22-02628-JRR, 2023 WL 5565831, at *1 n.2 (D. Md. Aug. 28, 2023). Employment termination letters are also commonly classified as integral to a complaint in this context. *E.g., Love v. McAdams*, Civ. No. 21-02029-JRR, 2025 WL 3623687, at *1 n.4 (D. Md. Dec. 15, 2025); *Carter v. SNC-Lavalin Constructors, Inc.*, Civ. No. DKC-17-3198, 2019 WL 918382, at *3 (D. Md. Feb. 25, 2019). Accordingly, the Court will consider the EEOC Charges of Discrimination and right-to-sue letters as well as Plaintiff's termination letter (ECF Nos. 3-4, 3-5, 3-7, 3-8, 3-9). There is also persuasive authority finding that a last chance agreement can be integral to a complaint. *Sterrett v. Giant Eagle, Inc.*, 681 F. App'x 145, 147 n.1 (3d Cir. 2017). However, the Court need not decide whether the LCA is integral here because the Court's analysis would not change regardless of whether it accepts Plaintiff's allegations about the LCA as true. Thus, the Court will not consider the LCA or the other documents that Defendants attached to their Motion.

## III.    DISCUSSION

Plaintiff brings claims under: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, for hostile work environment, race discrimination, and retaliation; 42 U.S.C. § 1983 for violations of the Due Process and Equal Protection Clauses of the Constitution; and Maryland law for violation of the Maryland Fair Employment Practices Act and for the common law tort of wrongful discharge.[4]  In addition to the factual allegations described above, the Complaint also provides

---

[4] Notably, the Complaint contains no enumerated count alleging gender discrimination. While there are factual allegations in the Complaint relating to gender discrimination, these background factual allegations alone are not

numerous "comparators," *i.e.* other AADF correctional officers who Plaintiff alleges received more favorable treatment than her despite engaging in similar conduct. The Court will discuss relevant alleged facts about these comparators as appropriate below.

### A. Title VII

#### 1. Procedural Requirements

Before bringing a Title VII lawsuit in federal court, a plaintiff must "administratively exhaust" her claim by filing a Charge of Discrimination with the EEOC. *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 543–44 (2019). If the EEOC takes no action within 180 days, then it must issue a right-to-sue letter to the plaintiff. 42 U.S.C. § 2000e-5(f)(1). If the plaintiff wishes to file suit in federal court, she must do so within 90 days of receipt of the right-to-sue letter. *Id.* When the plaintiff brings suit in federal court, her complaint may typically only contain claims that were previously raised in her EEOC Charge of Discrimination. *See Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019). Furthermore, "the factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

Here, Plaintiff's first EEOC Charge contains allegations of a hostile work environment, race discrimination, and retaliation relating to both "ongoing harassment" and her three-day suspension in July 2023. (ECF No. 3-4 at 4.) Thus, these claims are administratively exhausted at least as to these events. Plaintiff's second EEOC Charge contains claims for gender discrimination and retaliation "with respect to suspension and discharge," and the Charge also specifically references the last chance agreement. (ECF No. 3-8 at 1.) Thus, Plaintiff's retaliation

---

sufficient under Federal Rule of Civil Procedure 8 to state a separate count for gender discrimination. *See Mason v. Wyeth, Inc.*, 183 F. App'x 353, 359 (4th Cir. 2006); *Carr v. Md. Grocery Store Co.*, Civ. No. GLR-17-244, 2019 WL 1427779, at *4 n.4 (D. Md. Mar. 29, 2019). Therefore, the Court will not address the merits of any gender discrimination claim because no such claim has been pled.

claim—at least insofar as it relates to the LCA, suspension, and termination—has been administratively exhausted.[5]

Although all of Plaintiff's claims have been administratively exhausted, the timeliness of her claims is less certain. Plaintiff did properly sue within 90 days of receipt of her second right-to-sue letter, so the retaliation claim is properly before the Court. But Plaintiff did not sue within 90 days of receipt of her first right-to-sue letter. Thus, at first glance, the remaining claims in her first Charge—hostile work environment and race discrimination—would be untimely. But Plaintiff posits two alternative arguments in response: (1) the Court should consider the hostile work environment and race discrimination claims as administratively exhausted by the *second* EEOC Charge, not just the first Charge (which would mean that these claims have been timely filed in this suit); or (2) the Court should equitably toll the 90-day filing deadline that attached after issuance of the first right-to-sue letter. The Court rejects Plaintiff's first argument but agrees, at this stage, with the second one.

### a. Plaintiff's Hostile Work Environment And Race Discrimination Claims Were Not Administratively Exhausted By The Second EEOC Charge

Generally speaking, a complaint in federal court may ordinarily only contain claims that were previously raised in an EEOC Charge of Discrimination. *Stewart*, 912 F.3d at 705. But there is an exception to this rule. "[F]ederal courts may still hear claims that the employee did not raise before the agency, as long as they are 'like or related' and grow out of the allegations during the pendency of the case before the agency." *Id.* This gloss on the administrative exhaustion requirement ensures that the requirement does not "become a tripwire for hapless plaintiffs" and

---

[5] While a claim for gender discrimination would have been administratively exhausted, the Court has already noted that no such claim has been pled in this case.

that it does not "erect insurmountable barriers to litigation out of overly technical concerns." *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593–94 (4th Cir. 2012).

Plaintiff contends that her hostile work environment and race discrimination claims are "like or related" to the gender discrimination and retaliation claims she alleged in her second EEOC Charge.  However, there is ample caselaw which rejects this precise argument.  *See, e.g.*, *Chacko*, 429 F.3d at 509 ("For example, the plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex."); *Nelson v. Loc. 1422, Int'l Longshoremen's Ass'n*, No. 22-1456, 2023 WL 2888548, at *4 (4th Cir. Apr. 11, 2023) (unpublished) (finding that a sex discrimination claim brought for the first time in federal court was not "like or related" to a hostile work environment claim that had been properly exhausted before the EEOC); *Dallas v. Giant Food, Inc.*, 187 F. Supp. 2d 505, 508 (D. Md. 2002), *aff'd sub nom. Skipper v. Giant Food Inc.*, 68 F. App'x 393 (4th Cir. 2003) (finding that a hostile work environment claim was not "like or related" to a race discrimination claim).

Plaintiff argues, however, that her case is unique because her hostile work environment and race discrimination claims were "functional[ly] exhaust[ed]" by the second Charge.  (ECF No. 5 at 7.)  This argument is somewhat compelling.  As Plaintiff notes, there are two purposes to Title VII's administrative exhaustion requirement: (1) providing notice to the employer of the alleged violations and (2) allowing the EEOC to take "the first crack" at resolving the case.  *Sydnor*, 681 F.3d at 593–94.  Here, these purposes were met.  The County was on notice via Plaintiff's first Charge of all the claims in Plaintiff's Complaint, and the EEOC was also given the first chance to investigate all of Plaintiff's claims.

Even so, binding caselaw requires the Court to reject Plaintiff's argument. *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009), *abrogated on other grounds by*, *Fort Bend Cnty.*, 587 U.S. at 543; *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 n.4 (4th Cir. 2002). In *Bryant*, an employee filed an EEOC Charge alleging race and sex discrimination relating to a suspension. *Bryant*, 288 F.3d at 132 n.4. The employee later timely sued in federal court based on this Charge, but the case was dismissed without prejudice for failure to effectuate service of process. *Id.* In the meantime, the employee had been terminated. *Id.* at 129, 132 n.4. After dismissal of his first federal lawsuit, the employee filed a second EEOC Charge, which alleged only race discrimination. *Id.* at 130. After being issued a right-to-sue letter, the employee sued again. *Id.* He brought a race discrimination claim relating to his suspension and termination, and he included a sex discrimination claim relating to those events as well (among other claims). *Id.* While the race discrimination claim was properly exhausted, the Fourth Circuit concluded that the sex discrimination claim was not administratively exhausted because it was not included in the second EEOC Charge. *Id.* at 132 n.4. Thus, although the first EEOC Charge gave the employer notice of the plaintiff's sex discrimination allegation and enabled the EEOC to investigate it, the claim was still not properly exhausted.

Despite its seeming tension with the purposes of administrative exhaustion, the outcome in *Bryant* binds the Court. Here, Plaintiff brought her hostile work environment and race discrimination claims in her first Charge. But, assuming that the instant lawsuit is only timely if it is based on the second Charge, the instant lawsuit must only be based on the claims in that Charge, namely gender discrimination and retaliation, and those claims that are "like or related." The *Chacko* line of cases illustrates that, as a general matter, the "like or related" standard is not met here. And *Bryant* confirms that, in the peculiar circumstances here where Plaintiff has

9

satisfied the purposes of administrative exhaustion, her hostile work environment and race discrimination claims are still not administratively exhausted by the second Charge as a matter of law. *See Bryant*, 288 F.3d at 132 n.4.

### b. The Court Will Equitably Toll the 90-Day Deadline That Attached After Plaintiff Received Her First Right-To-Sue Letter

That leaves Plaintiff's other argument: that this lawsuit is not *only* timely if it is based on the second Charge. Rather, Plaintiff asserts that the Court may consider the claims in the first Charge by equitably tolling the 90-day filing deadline that attached after Plaintiff received her *first* right-to-sue letter. At this early stage in the litigation, the Court agrees.

The caselaw is clear that the 90-day filing period that attaches after receipt of a right-to-sue letter is akin to a statute of limitations; it is not a jurisdictional requirement. *See Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) (en banc); *Dale v. Md. Dep't of Transp.*, Civ. No. ELH-13-191, 2015 WL 221628, at *12–13 (D. Md. Jan. 15, 2015), *aff'd*, 672 F. App'x 323 (4th Cir. 2017). Thus, this period may be equitably tolled but only if two circumstances are present. *Laber*, 438 F.3d at 429 n.25; *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548 (4th Cir. 2019). First, the plaintiff must have pursued her rights diligently. *Edmonson*, 922 F.3d at 548. Second, some extraordinary circumstance must have prevented timely filing. *Id.* As to this second requirement, "[n]early every circuit has recognized that equitable tolling may be appropriate 'when an administrative agency misleads a complainant, particularly one who is without the benefit of counsel.'" *Jacobs v. Walmart Inc.*, Civ. No. RDB-22-2666, 2023 WL 4532822, at *7 (D. Md. July 13, 2023) (quoting *Anderson v. Unisys Corp.*, 47 F.3d 302, 306–07 (8th Cir. 1995)) (collecting cases).

The sequence of events that Plaintiff alleges in her Complaint meets these requirements. After receiving her first right-to-sue letter, Plaintiff sought clarification from the EEOC. (*See* ECF

No. 1 ¶ 87.) Then, "[f]ollowing [EEOC] Supervisor Rhodes' advice," Plaintiff filed a second Charge of Discrimination and the EEOC reopened her case. (*Id.* ¶¶ 88–89.) Critically, the second Charge alleged gender discrimination and added an allegation of retaliation based on Plaintiff's termination. Because these two allegations do not overlap with those made in the first Charge, the Court infers that Plaintiff (who was proceeding pro se before the EEOC) was merely attempting to add to the allegations made in the first Charge, not replace them. In other words, due to the allegedly misleading advice from the EEOC supervisor, Plaintiff was under the impression that she should supplement her EEOC administrative complaint rather than immediately file a lawsuit in federal court. Thus, it was the EEOC's allegedly misleading advice that caused Plaintiff not to file suit within 90 days of receipt of the first right-to-sue letter. Accordingly, based on the alleged facts, Plaintiff acted diligently but was stymied by "circumstances external to [her] own conduct." *Edmonson*, 922 F.3d at 549. At this juncture, Plaintiff is entitled to equitable tolling of the 90-day filing period that began to run upon receipt of her first right-to-sue letter. [6] Thus, the Court will consider the merits of her hostile work environment and race discrimination claims.

The Court notes, however, the limits of its merits review of these claims. The Court may only review claims that are both "reasonably related" to the first Charge *and* that could have been "developed by reasonable investigation" of the first Charge "*during the pendency of the case before the agency.*" *Stewart*, 912 F.3d at 706 (emphasis added). Here, the first Charge was filed on August 2, 2023 (ECF No. 3-4 at 4) and the EEOC closed its investigation on June 10, 2024 (ECF No. 1 ¶ 85). Plaintiff was terminated the next day. (ECF No. 1 ¶ 86.) Thus, the Court may consider events that occurred while the EEOC was investigating the first Charge. But the Court cannot consider any events that occurred after the EEOC closed its investigation, including

---

[6] Of course, if information is revealed in discovery that runs counter to Plaintiff's allegations about her communications with the EEOC, then the County may renew its argument in opposition to equitable tolling.

11

Plaintiff's termination, because these did not occur "during the pendency of the case before the agency." *Stewart*, 912 F.3d at 706.

*    *    *

To recap, the Court holds that Plaintiff's retaliation claim was administratively exhausted by the second Charge and was timely brought in this Court. The Court further holds that the hostile work environment and race discrimination claims were not administratively exhausted by the second Charge. However, the hostile work environment and race discrimination claims were administratively exhausted by the first Charge. While these claims were not filed in this Court within the required 90-day period, based on the facts as alleged in the Complaint, Plaintiff meets the requirements for equitable tolling of the 90-day filing deadline. Because of these holdings, the Court will consider all actionable facts relevant to Plaintiff's retaliation claim but only those actionable facts relevant to the hostile work environment and race discrimination claims that occurred on or before June 10, 2024.

Onward to the merits.

### 2. Hostile Work Environment

To state a Title VII hostile work environment claim, a plaintiff must plausibly allege: (1) unwelcome conduct (2) based on a protected characteristic (3) that was severe or pervasive enough to make her work environment hostile or abusive, (4) that was imputable to her employer, and (5) the protected characteristic was the "but for" cause of the alleged harassment. *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Cir. 2022).

Plaintiff alleges that the combination of several incidents occurring after August 2022 created a hostile work environment. (ECF No. 1 ¶ 119.) First, she argues that supervisors "amplified trivial incidents against Plaintiff while ignoring her complaints." (*Id.* ¶ 122.) But she

12

does not point to any allegations which suggest that this treatment was based on a protected characteristic. Second, Plaintiff notes that she was barred from entering AADF while under investigation whereas comparators such as Officer Bailey were allowed to work in the building while facing termination. (*Id.* ¶ 123.) But Plaintiff never states the race or sex of Officer Bailey in the Complaint. Thus, even if the Court assumes that this allegation is relevant to a hostile work environment claim insofar as it constitutes allegedly unwelcome conduct, the Court has no basis to conclude that it was based on a protected characteristic.

That leaves one final incident: the "severe racial and gender-based slur" that an inmate allegedly directed at Plaintiff in October 2022. (*Id.* ¶¶ 32, 121.) The Fourth Circuit has made clear that even a single utterance of a racial slur—and in particular, the odious racial slur that was allegedly uttered here—is "severe enough to engender a hostile work environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015) (en banc). As the Fourth Circuit observed, "perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as" the precise one allegedly said here. *Id.* To be sure, there are differences between this case and *Boyer-Liberto*. In *Boyer-Liberto*, a supervisor directed the racial slur at the plaintiff, who was a cocktail waitress at a hotel. *Id.* at 269–70. Meanwhile, here, it was an inmate, not a supervisor, who directed the slur at Plaintiff. (ECF No. 1 ¶ 32.) As two Courts of Appeals have noted, "[b]y choosing to work in a prison, corrections personnel have acknowledged and accepted the probability that they will face inappropriate and socially deviant behavior." *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 550 (8th Cir. 2007) (quoting *Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669, 677 (6th Cir. 2000)). But the core teaching of *Boyer-Liberto* is that some words are, by their nature, so offensive that their utterance just one time is beyond the bounds of

13

what is acceptable in the workplace. *See Boyer-Liberto*, 786 F.3d at 280. Depending on the conduct of the employer, this can be true even when one's workplace is a prison. Here, based on the overall context as alleged, Plaintiff has sufficiently alleged a hostile work environment.

Although uttered by an inmate, the slur is attributable to the County because Sgt. Blackburn, a supervisor, "told Plaintiff to 'let it go' in front of the inmates." (ECF No. 1 ¶¶ 28, 32); *see Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (holding that, under Title VII, employers can be vicariously liable for the actions of supervisors). In this way, if the allegation is true as the Court must assume at this stage, Sgt. Blackburn arguably "fail[ed] to take immediate and appropriate corrective action in response to a hostile work environment" of which he was aware. *Beckford v. Dep't of Corr.*, 605 F.3d 951, 957–58 (11th Cir. 2010) (citation omitted). On these "facts," the County's alleged failure to remedy the abusive treatment of Plaintiff was plausibly negligent, which would make it liable under Title VII for creating a hostile work environment. *See, e.g., id.* at 958 (holding that prisons can be liable for a hostile work environment created by inmate behavior when the prison negligently fails to take corrective action to stop the abusive behavior); *Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 605 (7th Cir. 2006) (same); *Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669, 677 (6th Cir. 2000) (same). Accordingly, the County's motion to dismiss Plaintiff's Title VII hostile work environment claim will be denied.[7]

### 3. Race Discrimination

Plaintiff next contends that she suffered race discrimination in violation of Title VII. However, the Complaint's allegations are insufficient to state this claim.

---

[7] While the County raised other timeliness arguments, it did not contend that the incident underlying Plaintiff's hostile work environment claim was itself not timely raised in the Charges of Discrimination pursuant to 42 U.S.C. § 2000e-5(e)(1). Accordingly, the County has waived this argument. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding that the timely filing requirement in 42 U.S.C. § 2000e-5(e)(1), "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling").

### a. Legal Standards

Title VII "prohibits an employer from "discharg[ing] any individual, or [ ] otherwise discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting 42 U.S.C. § 2000e-2(a)(1)). This provision requires proof that the defendant had a discriminatory intent or motive. *Yampierre v. Balt. Police Dep't*, Civ. No. ELH-21-1209, 2023 WL 6049489, at *25 (D. Md. Sept. 15, 2023) (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988)). Discriminatory intent may be proven in two ways. *Johnson v. Baltimore City*, 163 F.4th 808, 814 (4th Cir. 2026). First, a plaintiff may present direct evidence that race was a motivating factor in the employer's adverse employment action. *Id.* Second, a plaintiff may rely on the *McDonnell Douglas* burden-shifting framework. *Id.*; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, Plaintiff does not contend that there is direct evidence of race discrimination, so the Court will analyze her claim only under *McDonnell Douglas*.

Pursuant to the *McDonnell Douglas* framework, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." *Johnson*, 163 F.4th at 815 (internal quotation marks omitted).[8] "Courts frequently reframe the fourth element of a race discrimination claim pursuant to Title VII as 'similarly situated comparators.'" *Johnson*, 163 F.4th at 815 (internal quotation marks and citation omitted). In cases of allegedly discriminatory discipline, a plaintiff and a comparator are similarly

---

[8] Unlike at the summary judgment stage, a plaintiff contesting a motion to dismiss need not present a prima facie case of discrimination for her claim to survive. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). "Rather, a plaintiff need only 'offer facts that plausibly support inferences that' the elements of her claim are satisfied." *Yampierre*, 2023 WL 6049489, at *25 (quoting *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Cir. 2022)).

15

situated when "(1) the plaintiff is a member of a protected class, (2) the plaintiff's prohibited conduct was comparable in seriousness to misconduct of employees outside the protected class, and (3) the disciplinary measures enforced against the plaintiff were more severe than those enforced against the other employees." *Seabrook v. Driscoll*, 148 F.4th 264, 270 (4th Cir. 2025).

### b. Analysis

As to the first *McDonnell Douglas* element, there is no dispute that Plaintiff falls into a protected class. (ECF No. 3-1 at 10.) As to the second element, because Plaintiff bases her race discrimination claim on the allegation that her disciplinary history was itself the discriminatory targeting (ECF No. 5 at 18), the County cannot point to this disciplinary history to argue that Plaintiff's job performance was unsatisfactory. *Rorie v. Bd. of Educ.*, 653 F. Supp. 3d 217, 231 (D. Md. 2023). As to the third element, Plaintiff alleges three potential adverse actions: a three-day suspension in July 2023, imposition of the LCA in March 2024, and her termination in June 2024. As the Court has explained, it is procedurally barred from considering the termination. But the Court will assume that both the suspension and the imposition of the LCA constitute adverse actions. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). However, Plaintiff's claim fails at the fourth *McDonnell Douglas* element even assuming that both of these events are adverse actions.

The core of Plaintiff's race discrimination claim is that she experienced "harsher discipline" compared to non-Black employees. (*See* ECF No. 1 ¶ 17.) This discipline generally came in response to Plaintiff's repeated use of profanity around inmates. (*See* ECF No. 1 ¶¶ 18, 24, 54, 67, 77.) Meanwhile, Plaintiff contends that non-Black detention officers who committed similar or worse misconduct were not terminated. But several of the comparators give Plaintiff no support either because they too are Black (*id.* ¶¶ 40, 44, 46), or because the Complaint does not

16

state their race (*id.* ¶¶ 49, 60). And, of the remaining comparators, only three are alleged to have engaged in misconduct directed at inmates, which is a critical distinguishing factor. *See, e.g., Thomas v. Delmarva Power & Light Co.*, 715 F. App'x 301, 303 (4th Cir. 2018) (reasoning that a store employee's conduct was not sufficiently similar to the conduct of proposed comparators because the plaintiff-employee's conduct was directed at customers); *Sook Yoon v. Sebelius*, 481 F. App'x 848, 850 (4th Cir. 2012) (explaining that a nurse's misconduct, which took place in front of a patient rather than in private, distinguished the nurse from possible comparators).

The three remaining comparators are "CPS II" Tina Sanders, Officer Jorge Pizarro, and Officer Eduardo Pizarro. Sanders is white (ECF No. 1 ¶ 43) while Jorge and Eduardo Pizarro are both Hispanic (*id.* ¶¶ 47, 48). Each of these three officers is alleged to have committed serious misconduct against inmates: Sanders had a sexual relationship with an inmate (*id.* ¶ 43), Jorge Pizarro stabbed an inmate with a key (*id.* ¶ 47), and Eduardo Pizarro punched an inmate multiple times (*id.* ¶ 48). All of this conduct is undoubtedly more severe than the repeated use of profanity. But these officers also experienced much more severe discipline than Plaintiff did during the actionable time period. Plaintiff was merely given a three-day suspension and placed on the LCA. Meanwhile, Sanders was forced to retire (*id.* ¶ 43.a), and Jorge Pizarro was given a three-day unpaid suspension *and* was barred from AADF for several weeks (*id.* ¶ 47.a). While Plaintiff contends that Eduardo Pizarro faced no "meaningful action" (*id.* ¶ 48.a), the Court is unable to credit such a vague allegation. *See Iqbal*, 446 U.S. at 678. Accordingly, because Plaintiff has not provided any similarly situated comparators, her race discrimination claim will be dismissed.

### 4. Retaliation

Title VII also forbids employers from retaliating against employees who complain about prior discrimination or retaliation. *Johnson*, 163 F.4th at 819. As with discrimination, retaliation

17

can be proven by either direct evidence of retaliatory animus or via the *McDonnell Douglas* framework. *Id.* Again, Plaintiff does not contend that there is direct evidence of retaliation, so the Court will only assess her claim under *McDonnell Douglas*. Under *McDonnell Douglas* at the motion to dismiss stage, a plaintiff must plausibly allege that "(1) she engaged in protective activity, (2) the employer took adverse action against her, and (3) a causal relationship existed between the protected activity and the adverse employment action." *Id.*

Here, Plaintiff engaged in two protected activities: (1) her filing of the first EEOC Charge, *see id.*, and (2) her request for a meeting with Defendant Klein to discuss alleged discrimination, *see DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015). Moving onto the second *McDonnell Douglas* element, Plaintiff's termination was an adverse action. *Strothers v. City of Laurel*, 895 F.3d 317, 328 (4th Cir. 2018). Plaintiff also contends that being placed on the last chance agreement itself was an adverse action. The Court is skeptical of this claim. *See, e.g.*, *Credeur v. Louisiana*, 860 F.3d 785, 798 (5th Cir. 2017) (holding that, in the retaliation context, imposition of a last chance agreement is ordinarily not an adverse action). But even assuming that the imposition of the LCA was an adverse action, Plaintiff's claim still fails on the third *McDonnell Douglas* element.

Under this third element, "[a] plaintiff may demonstrate that a protected activity caused an adverse action through either one of two routes: (1) by establishing a temporal proximity between the protected activity and adverse action, or (2) by establishing that other relevant evidence indicates continuing retaliatory conduct and animus toward the plaintiff." *Johnson*, 163 F.4th at 819 (internal quotation marks and citation omitted). Plaintiff's retaliation claim fails because she cannot satisfy either of these methods.

Beginning with temporal proximity, "the gap between the protected activity and the

18

adverse employment action can generally be no longer than two months." *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025). Here, there must be temporal proximity between (1) either Plaintiff's request to meet with Klein or her filing of the first EEOC Charge (the protected activities) and (2) the imposition of the LCA or Plaintiff's termination (the adverse actions). But Plaintiff's request to meet with Klein occurred in July 2023 (ECF No. 1 ¶¶ 63, 113) and the first EEOC charge was filed in August 2023 (ECF No. 3-4 at 4). Meanwhile, the LCA was agreed to in March 2024 (ECF No. 1 ¶ 73) and Plaintiff was terminated in June 2024 (*id.* ¶ 86). Because the gap between any protected activity and any adverse action is greater than two months, there is no temporal proximity.[9]

Plaintiff is also unable to show continuing retaliatory conduct. The Fourth Circuit's recent rejection of a Title VII retaliation claim in *Barnhill* is indistinguishable from the present matter. In *Barnhill*, the plaintiff was an employee of the Drug Enforcement Administration ("DEA") who alleged that she was denied promotions due to her initiation of proceedings with the DEA's equal employment opportunity office. *Barnhill*, 138 F.4th at 132. The Fourth Circuit rejected the plaintiff's continuing retaliatory conduct argument for several reasons. First, the court noted that Barnhill "did not allege that she was treated favorably before the DEA gained knowledge that she had initiated an EEO proceeding." *Id.* at 133. Rather, because Barnhill alleged "that she repeatedly suffered discrimination before the initiation of her EEO proceeding," she could not "meritoriously argue that the initiation of the EEO proceeding caused her to be treated differently." *Id.* Second, "Barnhill never allege[d] that anyone at the DEA ever asked her about the EEO proceeding or that

---

[9] While it is true that Plaintiff's termination occurred just one day after she received her first right-to-sue letter, receipt of a right-to-sue letter is not a protected activity. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting the "respondent's utterly implausible suggestion that the *EEOC's* issuance of a right-to-sue letter—an action in which the employee takes no part—is a protected activity of the employee" (emphasis in original)); *Jones v. Calvert Grp., Ltd.*, Civ. No. DKC-06-2892, 2010 WL 5055790, at *8 (D. Md. Dec. 3, 2010).

she was ever coerced into discussing it with anyone at the DEA." *Id.* Third, Barnhill did not allege "that anyone at the DEA told her that they would be tampering with her EEO proceeding." *Id.* And finally, "because Barnhill's complaint [was] riddled with allegations of discrimination and misconduct on her part that caused contemporaneous responses from the DEA," there could only be a "remote and tenuous connection" between "any suggestive events that occurred between her protected activity and alleged adverse employment actions." *Id.* at 133–34.

Plaintiff's retaliation claim here faces the same deficiencies. Plaintiff alleges a long sequence of mistreatment that began well before any protected activities took place. She also never alleges that anyone at AADF asked her about the EEOC investigation or otherwise coerced her into discussing it. Further, there are no allegations that any AADF employee, let alone a supervisor, said they would tamper with the EEOC proceeding. Finally, as in *Barnhill*, Plaintiff's Complaint identifies many instances of her own misconduct and the County's "contemporaneous responses" to address them, "both before and after the initiation of her EEO[C] proceeding." *See Barnhill*, 138 F.4th at 133. Therefore, there is at best a "remote and tenuous connection" between "any suggestive events that occurred between [Plaintiff's] protected activity and alleged adverse employment actions." *Id.* at 134. Accordingly, Plaintiff has not alleged a pattern of continuing retaliatory conduct, and her Title VII retaliation claim must be dismissed.

### B. 42 U.S.C. § 1983

Plaintiff next brings claims under 42 U.S.C. § 1983 against Defendants Klein, Ingle, and the County. This provision "allows plaintiffs to bring claims against state actors for alleged violations of their constitutional rights." *Jackson v. Dameron*, 171 F.4th 641, 645 n.1 (4th Cir. 2026). Here, Plaintiff alleges violations of her constitutional rights to procedural and substantive due process, and to equal protection under the law. The Court will address each in turn.

20

### 1. Procedural Due Process

The Fourteenth Amendment's Due Process Clause requires that, before a public employee is terminated, she must receive "oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Here, Plaintiff received notice and a hearing. The termination letter confirms this (ECF No. 3-7), and Plaintiff does not dispute it (*see* ECF No. 5 at 11). However, Plaintiff contends that the hearing was not a true opportunity to present her side of the story because she was not allowed access to the evidence against her. (ECF No. 5 at 11.) Specifically, she states that she was "never provided the nurse complaints that formed the basis for her termination" nor did she receive "witness statements and surveillance footage." (*Id.*) However, "an employee has no right to know all the evidence against [her]." *Smith v. Comm'rs of St. Mary's Cnty.*, No. 21-1947, 2023 WL 4399222, at *3 (4th Cir. July 7, 2023) (citing *Linton v. Frederick Cnty. Bd. of Cnty. Comm'rs*, 964 F.2d 1436, 1440 (4th Cir. 1992)). Rather, she only has the right to know "enough information to understand why she was being fired and [to] formulate a response to those grounds before she was terminated." *Id.*

Here, Plaintiff possessed the requisite information. According to the Complaint, she was aware of the nurses' allegations against her. (*See* ECF No. 1 ¶¶ 77, 80.) While the nurses' formal reports may not have been disclosed to her, Plaintiff understood why she was being fired and could formulate a response to those grounds in the pre-termination hearing. For instance, Plaintiff knew of which precise incident to request video footage. (*Id.* ¶ 80.) She also knew that the nurses had reported the incident. (*Id.* ¶ 78.) Further, Defendant Klein had already seen the video footage of the incident and determined that it substantiated the nurses' allegations. (*Id.* ¶ 81.) While Plaintiff may have disagreed with his conclusion, she does not allege—nor could she—that Klein was

21

unaware of potentially exonerative video footage. Thus, Plaintiff possessed enough information to respond to the grounds on which she was being terminated. Because Plaintiff received "all the process that is due," *Loudermill*, 470 U.S. at 547, her procedural due process claim will be dismissed.

### 2. Substantive Due Process

Although the Complaint is not entirely clear, Plaintiff also seems to bring a substantive due process claim as part of her § 1983 count. Specifically, Plaintiff alleges that Defendant Klein was deliberately indifferent to constitutional violations against her. (ECF No. 1 ¶¶ 101, 103.) But this claim must be dismissed because the deliberate indifference standard "does not apply to persons in an employment relationship with the government." *Slaughter v. Mayor of Balt.*, 682 F.3d 317, 321 (4th Cir. 2012). For a government employee, a substantive due process claim will only lie if the employee alleges that the government employer "intended to harm" her. *Id.* at 322. Because Plaintiff does not make this allegation, her substantive due process claim will be dismissed.

### 3. Equal Protection

Finally, the Court turns to the equal protection aspect of Plaintiff's § 1983 claim. The caselaw is clear that the merits analysis for equal protection claims in the employment discrimination context is identical to the Title VII merits analysis. *See, e.g., Bomar v. Bd. of Educ.*, No. 25-1065, 2026 WL 1031816, at *8 (4th Cir. Apr. 16, 2026) (citing *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004)); *Willis v. Anne Arundel Cnty.*, Civ. No. JKB-16-1388, 2017 WL 952686, at *5 (D. Md. Mar. 10, 2017), *aff'd*, 706 F. App'x 116 (4th Cir. 2017). Therefore, Plaintiff has not sufficiently alleged retaliation in violation of her equal protection right, but she has sufficiently alleged a hostile work environment. As to the race discrimination aspect, it is possible that Plaintiff could allege a violation of equal protection, but not of Title VII, because the

constitutional claim may not face the same procedural hurdles (which barred the Court's consideration of Plaintiff's termination). *See Booth v. Maryland*, 327 F.3d 377, 382 (4th Cir. 2003). However, this issue is ultimately irrelevant because Plaintiff has not sufficiently alleged an equal protection violation *against the proper party*.

### a. The County

Under § 1983, the County can be held liable only under a theory of *Monell* liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). To hold the County liable under *Monell*, Plaintiff must allege "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [her] rights." *Howard v. City of Durham*, 68 F.4th 934, 952 (4th Cir. 2023) (citation omitted). A policy or custom can be expressed in four ways:

> (1) Through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Id.* (citation modified).

First, Plaintiff does not allege that there was an express policy stating that supervisors should ignore racist and sexist slurs from inmates or that employees should be discriminated against on the basis of race. Second, as to the hostile work environment aspect of the claim, Plaintiff does not allege that Sgt. Blackburn possessed final policymaking authority. As to the race discrimination aspect, Plaintiff does allege that Klein was a final policymaker (ECF No. 1 ¶ 103), but her allegations are insufficient. The mere fact that an official has the power to hire and terminate an employee "cannot establish that he had the broader authority to craft municipal

policy." *Robinson v. Balog*, 160 F.3d 183, 190 (4th Cir. 1998). Here, Plaintiff alleges only that Klein terminated her. (ECF No. 1 ¶ 86.) There is not a single allegation relating to his authority to craft municipal policy. Accordingly, this theory of *Monell* liability is unavailable to Plaintiff.

Next, there are no allegations of a relevant omission such as a failure to train. Finally, there is no unconstitutional custom or usage because "proof of a single incident of the unconstitutional activity charged is not sufficient to prove the existence of a municipal custom." *Johnson*, 163 F.4th at 822 (citation omitted). "Rather, there must be numerous particular instances of unconstitutional conduct to establish a custom or practice." *Id.* (internal quotation marks and citation omitted). Here, as to the hostile work environment aspect of the claim, the Court has concluded that Plaintiff only alleged a single instance of unconstitutional conduct—Sgt. Blackburn's failure to take corrective action after the slur was allegedly directed at Plaintiff. As to the race discrimination aspect of the claim, Plaintiff points to no other employee who also faced race discrimination. Thus, she "has alleged none other than [her] own experience." *Misjuns v. City of Lynchburg*, 139 F.4th 378, 386 (4th Cir. 2025). This is insufficient enough to allege an unconstitutional usage or custom. *See id.* Accordingly, Plaintiff's equal protection claim against the County must be dismissed.

### b. Klein and Ingle

Plaintiff's equal protection claim against Defendants Klein and Ingle must also be dismissed. On the hostile work environment aspect of this claim, Plaintiff seems to plead a theory of supervisory liability because Klein and Ingle were both supervisory officers at AADF. (*See* ECF No. 1 ¶¶ 6–7.) To be liable under § 1983, a supervisor must have "had actual or constructive knowledge that her subordinate's conduct posed a pervasive and unreasonable risk of constitutional injury to persons in the plaintiff's position." *Bolick v. Anderson*, 169 F.4th 528, 541

(4th Cir. 2026) (internal quotation marks and citation omitted). But Plaintiff does not allege that either Klein or Ingle had knowledge of any of Sgt. Blackburn's conduct toward Plaintiff, let alone specific knowledge that he failed to act after the slur was allegedly directed at Plaintiff. Thus, on the hostile work environment aspect of this claim, Plaintiff has not sufficiently stated a claim for supervisory liability against Defendants Klein or Ingle.

As to the race discrimination aspect of the claim, it is unclear whether Plaintiff is proceeding on a theory of personal participation or supervisory liability. Either way, the claim fails. While Plaintiff does allege that Klein ordered her termination, she does not allege that Klein himself acted in a discriminatory manner when terminating her or had knowledge that the termination was discriminatory. That is because there are no allegations that Klein had knowledge of, or involvement in, the allegedly disparate treatment of the three relevant comparators: Tina Sanders, Jorge Pizarro, and Eduardo Pizarro. As to Ingle, there are no allegations that he was involved in Plaintiff's termination at all, so Plaintiff has also failed to allege his supervisory or personal liability. Accordingly, the equal protection claim against both of these Defendants will be dismissed.

### C. Maryland Law Claims

Plaintiff also brings two claims under Maryland law. First, she alleges that all Defendants violated the Maryland Fair Employment Practices Act (FEPA). Md. Code Ann. State Gov't §§ 20-601 et seq. (West 2026). FEPA is evaluated under the same standards as Title VII. *Md. Dep't of Health v. Best*, 329 A.3d 335, 348 (Md. App. Ct. 2024); *Hurley v. Howard Cnty. Dep't of Police*, Civ. No. CJC-25-1498, 2026 WL 864078, at *11 (D. Md. Mar. 30, 2026). Thus, the retaliation and race discrimination aspects of the claim will be dismissed as to all Defendants, but the hostile

25

work environment aspect of the claim will proceed against the County.[10]  However, this aspect of the claim cannot proceed against Defendants Klein and Ingle.  Even if the Court assumes that it could be legally permissible for them to be personally liable under FEPA for their actions as supervisors, *see Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir. 1989), *aff'd in relevant part on reh'g en banc*, 900 F.2d 27 (4th Cir. 1990), as described above, there are insufficient allegations that these two Defendants actually personally participated in the harassment.  Thus, the FEPA claim against them will be dismissed.

Further, the Court will not permit the FEPA claim to proceed against the John Doe defendants.  "The designation of a John Doe defendant is generally not favored in the federal courts." *Chidi Njoku v. Unknown Special Unit Staff*, No. 99-7644, 2000 WL 903896, at *1 (4th Cir. July 7, 2000) (unpublished table decision).  At minimum, the John Doe defendants must be "real, but unidentified." *Schiff v. Kennedy*, 691 F.2d 196, 197 (4th Cir. 1982).  Here, Plaintiff alleges that the John Does "are unknown supervisors, investigators, and policymakers." (ECF No. 1 ¶ 8.)  But Plaintiff has not made a single allegation against any of these unidentified figures.  Thus, there is no basis to conclude that these John Doe defendants are, in fact, real. *See Pair v. Alexander*, Civ. No. GLR-16-1492, 2018 WL 1583472, at *1 n.2 (D. Md. Apr. 2, 2018).  Accordingly, the FEPA claim against the John Does will be dismissed without prejudice. *See Attkisson v. Holder*, 925 F.3d 606, 628 (4th Cir. 2019).

Next, Plaintiff brings a claim under Maryland common law for the tort of wrongful discharge in violation of public policy.  However, the "tort of abusive discharge will not lie where

---

[10] Plaintiff argues that because FEPA has a longer statute of limitations than Title VII, her claims should not be time-barred under FEPA.  That is correct. *See* Md. Code Ann., State Gov't § 20-1013(a)(1) (West 2026).  But it is also irrelevant at this stage because the Court has equitably tolled the Title VII 90-day filing requirement.  Thus, her FEPA claim encompasses the same events as her Title VII claims.  And FEPA's longer statute of limitations does not affect the Court's conclusion that the hostile work environment and race discrimination claims were not administratively exhausted by the second EEOC Charge.  Thus, under FEPA, the Court still may not consider, for instance, Plaintiff's termination as an adverse action as part of her race discrimination claim.

the public policy sought to be vindicated by the tort is expressed in a statute which carries its own remedy for vindicating that public policy." *Chappell v. S. Md. Hosp., Inc.*, 578 A.2d 766, 770 (Md. 1990) (citation omitted).  Here, because Title VII and FEPA already vindicate the public policies against discrimination, harassment, and retaliation, the tort claim is not available to Plaintiff.  *See Wheeler v. Giant of Md., LLC*, No. 2131, Sept. Term, 2024, 2026 WL 19115, at *2 (Md. App. Ct. Jan. 2, 2026).  Thus, this claim will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Complaint (ECF No. 3) will be granted in part and denied in part.  A separate Order follows.

DATED this __10__ day of June, 2026.

BY THE COURT:

James K. Bredar
United States District Judge